

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 12, 2004

Mr. Paul Hudson, Chairman
Public Utility Commission of Texas
Post Office Box 13326
Austin, Texas 78711

Ms. Julie Parsley, Commissioner
Public Utility Commission of Texas
Post Office Box 13326
Austin, Texas 78711

Opinion No. GA-0257

Re: Whether the Public Funds Investment Act would govern a municipal utility's authority to invest certain nuclear decommissioning trust funds (RQ-0212-GA)

Dear Chairman Hudson and Commissioner Parsley:

Your questions arise because a municipal utility is considering acquiring an interest in a nuclear generating plant.[1] You explain that Federal Nuclear Regulatory Commission ("NRC") rules require the safe decommissioning of nuclear facilities after they cease operating and permit a utility to fund a facility's decommissioning costs over the life of the asset through an external trust. *See* Request Letter, *supra* note 1, at 2; *see also* 10 C.F.R. § 50.75 (2004) (decommissioning planning) (Nuclear Regulatory Commission).[2] The trust consists of amounts collected from utility customers and investment earnings. *See* Request Letter, *supra* note 1, at 2; *see also* 16 TEX. ADMIN. CODE § 25.231 (2004) (Pub. Util. Comm'n of Tex.) (electric utility's authority to include nuclear decommissioning expense as a service cost). Because the Public Utility Commission (the "Commission") is drafting rules regarding decommissioning trusts, you ask whether the Public Funds Investment Act, Government Code chapter 2256 (the "Public Funds Investment Act" or the "Act"), would govern a municipal utility's authority to invest certain decommissioning trust funds. *See* Request Letter, *supra* note 1, at 1.[3]

State law provides the Commission with regulatory authority over rates for "costs associated with nuclear decommissioning obligations," which "shall be included" as a charge to retail

---

[1] *See* Letter from Paul Hudson, Chairman, and Julie Parsley, Commissioner, Public Utility Commission of Texas, to Honorable Greg Abbott, Texas Attorney General (Apr. 15, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2] *See also* 10 C.F.R. § 50.2 (2004) ("Decommission means to remove a facility or site safely from service and reduce residual radioactivity to a level that permits – (1) Release of the property for unrestricted use and termination of the license; or (2) Release of the property under restricted conditions and termination of the license.").

[3] After submitting this request, the Commission formally proposed a new rule "relating to Nuclear Decommissioning following the Transfer of Nuclear Generating Plant Assets." *See* 29 Tex. Reg. 4632 (2004) (to be codified at 16 TEX. ADMIN. CODE § 25.303) (proposed May 14, 2004) (Pub. Util. Comm'n of Tex.).

customers. TEX. UTIL. CODE ANN. § 39.205 (Vernon Supp. 2004-05). You explain that if the municipal utility acquires an interest in the nuclear facility, decommissioning costs would continue to be collected from the *selling utility's* customers; your query is limited to the purchasing municipal utility's authority to invest funds from that source. *See* Request Letter, *supra* note 1, at 1-2.

The Commission is drafting a rule "to prescribe the [selling] utility's responsibility for charging rates for the collection of funds for a nuclear decommissioning trust" after the transaction and to "establish standards for the administration of the trust by the buyer of the nuclear plant asset." *Id.* at 1.[4] In regulating privately owned utilities, the Commission's "rules and ratemaking decisions concerning the appropriate level of the decommissioning charge" are based on the assumption that the trust will be invested in both equity and debt securities. *Id.* at 3. If the Public Funds Investment Act governs a municipal utility's authority to invest these decommissioning trust funds, however, the municipal utility "would be limited to investments in debt securities, which likely would mean a lower overall [investment] return" and thus "require a significantly higher non-bypassable charge to customers of the selling utility." *Id.*

Originally enacted in 1987, the Public Funds Investment Act was intended to "broaden" certain governmental entities' "investment opportunities."[5] Section 2256.003 provides that "[e]ach governing body of the following entities may purchase, sell, and invest its funds and funds under its control in investments authorized under this subchapter in compliance with investment policies approved by the governing body and according to the standard of care prescribed by Section 2256.006." TEX. GOV'T CODE ANN. § 2256.003(a) (Vernon 2000). The entities subject to the Act include "(1) a local government; (2) a state agency; (3) a nonprofit corporation acting on behalf of a local government or a state agency; or (4) an investment pool acting on behalf of two or more local governments, state agencies, or a combination of those entities." *Id.* Other sections in chapter 2256, subchapter A list various authorized investments. *See id.* §§ 2256.009-.0201 (Vernon 2000 & Supp. 2004-05).

Your question involves a municipal utility owned by the City of San Antonio, a local government subject to the Act. *See id.* § 2256.003(a)(1) (Vernon 2000); *see also id.* § 2256.0201 (authorizing a municipality that owns a municipal electric utility to enter into certain hedge contracts related to energy prices); Request Letter, *supra* note 1, at 2 n.3; Letter from N. Beth Emery, Senior Vice President & General Counsel, City Public Service of San Antonio, to Honorable Greg Abbott, Texas Attorney General at 1 (Apr. 22, 2004) (on file with Opinion Committee). Section 2256.004(b) of the Government Code provides that the Act does not apply to "an investment donated to an investing entity for a particular purpose or under terms of use specified by the donor." TEX. GOV'T CODE ANN. § 2256.004(b) (Vernon 2000). Your request letter focuses on whether decommissioning trust funds derived from charges paid by the selling utility's customers fall within the section 2256.004(b) exception. *See* Request Letter, *supra* note 1. Specifically, you ask the following question:

---

[4]*See also id.*

[5]*See* Tex. Att'y Gen. Op. No. DM-489 (1998) at 1 (citing FISCAL NOTE, Tex. Comm. Substitute H.B. 1488, 70th Leg., R.S. (1987)).

> If funds are held in a separate trust account pursuant to the requirements of an order or rule of the Commission, would [the section 2256.004(b) exception] apply to (i) funds for investment in a nuclear decommissioning trust that are collected pursuant to regulation from the customers of an entity that has transferred its interest in a nuclear generating plant to a local government entity (a municipally-owned utility) whose investments are otherwise subject to the restrictions of the Act; and (ii) the decommissioning trust funds accumulated by the transferee entity prior to the transfer which are acquired by the local government entity in connection with its acquisition of the transferred interest in the nuclear generating plant?

*Id.* at 1.

The Act does not define any of the terms in section 2256.004(b), and we construe the phrase "investment donated to an investing entity," as it is commonly understood, to refer to an investment given to the entity as a gift. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) (words that have not acquired a technical or particular definition shall be construed according to their common usage); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 375 (9th ed. 1983) (defining "donate" to mean "to make a gift of," "to make a donation"). Section 2256.004(b) excepts from the Act an investment given to the investing entity as a gift, thus permitting the entity to continue to hold the donated investment even if it is not an investment the Act permits. However, neither trust funds derived from charges paid by the selling utility's customers in exchange for utility services nor trust funds transferred to a purchasing municipal utility by the selling utility in connection with the transfer of an interest in a nuclear facility may be characterized as a donation or gift to the municipal utility.

Although your question focuses on section 2256.004(b), your concern is whether the Public Funds Investment Act would govern the municipal utility's authority to invest the trust funds. To fully respond to your query, we must consider whether the trust fund moneys are "public funds" within the Act's scope. The Act permits a subject entity to "purchase, sell, and invest" in the listed investments "its *funds* and *funds* under its control." TEX. GOV'T CODE ANN. § 2256.003 (Vernon 2000) (emphasis added). Section 2256.002(3) defines the term "funds" to mean "*public funds* in the custody of a state agency or local government that: (A) are not required by law to be deposited in the state treasury; and (B) the investing entity has authority to invest." *Id.* § 2256.002(3) (emphasis added). In Attorney General Opinion DM-489, this office concluded that the term "public funds" in section 2256.002(3) denotes funds that belong to the investing entity "collected by virtue of some general law, and that are designated to a public purpose." Tex. Att'y Gen. Op. No. DM-489 (1998) at 2. Moreover, "[f]unds a state agency possesses merely as a custodian, for the benefit of contributors, are not public funds." *Id.* at 3.

Applying this standard, Attorney General Opinion DM-489 concluded that the Public Funds Investment Act did not govern the Department of Banking's authority to invest certain funds, such as funds of a liquidated, uninsured bank or a trust company in conservatorship, because they were not "public funds." *See id.* at 4-8 (addressing whether certain funds administered by the Department of Banking are public funds subject to the Act). The funds were not public funds because they did not belong to the state, because the Department held them as a mere custodian, and because they would not be used to discharge a general public purpose. *See id.*

Here, we address whether the Public Funds Investment Act applies to a municipal utility's authority to invest decommissioning trust funds, the corpus of which derives from charges paid by the selling utility's customers, and which are dedicated to paying a nuclear facility's decommissioning costs. *See* Request Letter, *supra* note 1, at 3. As you note, the funds at issue would be "governed by a trust agreement, NRC rules, and Commission rules." *Id.* at 3-4. Pursuant to a Commission rule,

> Each electric utility collecting funds for a nuclear decommissioning trust shall place the funds in an external, irrevocable trust fund. The utility shall appoint an institutional trustee and may appoint an investment manager(s). Unless otherwise specified in subsection (b) of this section, the Texas Trust Code controls the administration and management of the nuclear decommissioning trusts, except that the appointed trustee(s) need not be qualified to exercise trust powers in Texas.

16 TEX. ADMIN. CODE § 25.301(a)(2) (2004) (Pub. Util. Comm'n of Tex.); *see also* 10 C.F.R. § 50.75(e)(ii) (2004) ("An external sinking fund is a fund established and maintained by setting funds aside periodically in an account segregated from licensee assets and outside the administrative control of the licensee and its subsidiaries or affiliates in which the total amount of funds would be sufficient to pay decommissioning costs at the time permanent termination of operations is expected. An external sinking fund may be in the form of a trust . . . ."). The Commission rule also governs trust agreements and decommissioning trust investments. *See* 16 TEX. ADMIN. CODE § 25.301(b)-(c) (2004) (Pub. Util. Comm'n of Tex.). In addition, you inform us that Commission orders and rules "are expected to specify that funds in excess of actual decommissioning costs are to be refunded to the customers of the seller of the nuclear asset." Request Letter, *supra* note 1, at 4.[6] Based on this regulatory framework, the municipal utility at issue observes that it would hold these decommissioning trust funds not on its own behalf but as a custodian pursuant to a trust established to provide for the selling utility customers' share of decommissioning costs. *See* Letter from N. Beth Emery, Senior Vice President & General Counsel, City Public Service of San Antonio, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General at 2 (July 1, 2004) (on file with Opinion Committee).

Assuming that the decommissioning trust funds at issue here will not belong to the municipal utility but rather will be held by the municipal utility as a custodian to pay for decommissioning costs and that any excess funds will be returned to the selling utility's customers, they are not "public funds" within the meaning of the Public Funds Investment Act, and the Act does not govern the municipal utility's authority to invest them.

---

[6]The rule formally proposed by the Commission after submitting this request would provide that "[a]ny funds remaining in the trust after the completion of decommissioning shall be refunded to customers in a manner determined by the commission." 29 Tex. Reg. 4632, 4636 (2004) (to be codified at 16 TEX. ADMIN. CODE § 25.303(f)(5)) (proposed May 14, 2004) (Pub. Util. Comm'n of Tex.).

### S U M M A R Y

The Public Funds Investment Act applies to "public funds" and generally does not govern funds that a governmental entity holds as a mere custodian for the benefit of contributors. In the event a municipal utility acquires an interest in a nuclear facility, the Act would not govern the municipal utility's authority to invest nuclear decommissioning trust funds derived from charges paid by the selling utility's customers if the municipality holds the funds as a custodian to pay for decommissioning costs and any excess funds will be returned to the selling utility's customers.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee